UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JOSHUA J. COOK,                            )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )        Case No. 05-CV-0605-CVE-PJC
                                           )
OTTAWA COUNTY BOARD OF                     )
COUNTY COMMISSIONERS, GARY                 )
SMITH, ROBERT BAINE, and                   )
CITY OF COMMERCE,                          )
                                           )
            Defendants.                    )

<u>OPINION AND ORDER</u>

Now before the Court are the following motions: Defendant Gary Smith's Motion for

Summary Judgment (Dkt. # 46); Motion for Summary Judgment on Behalf of the Defendants,

Robert [sic] and The City of Commerce, Oklahoma (Dkt. # 48); and plaintiff's Motion for Leave to

Add Additional Defendants and for Extension of Discovery (Dkt. ## 50, 52).

**I.**

Plaintiff Joshua J. Cook was accused of stabbing his cousin, Jeremy Chaffin, in Newton

County, Missouri.  Based on this accusation, police dispatchers in Kansas, Arkansas, and Oklahoma

were notified to be on the lookout for Cook.  On March 14, 2005, the Ottawa County dispatcher

received this report and relayed the information to the Commerce Police Department.  The Ottawa

County dispatcher notified Robert Baine, the city of Commerce ("City") chief of police, that Cook

was wanted in connection with a stabbing and asked if Cook was still employed by the City as a

sanitation worker.  Baine confirmed that Cook worked for the city sanitation department. Following

his conversation with the dispatcher, Baine contacted the Ottawa County Sheriff's office for

assistance with arresting Cook.  The supervisor on duty at the time was deputy sheriff Gary Smith, and Smith agreed to provide back-up for the arrest.[1]

The parties dispute the significance of the dispatcher's statement that Cook was "wanted" in relation to a stabbing.  Baine asserts that he generally interprets a dispatcher's assertion that a suspect is wanted to mean that an arrest warrant has been issued.  The Commerce Police Department has an internal policy to confirm the existence of a warrant before effecting an arrest, which involves calling the appropriate law enforcement agency for confirmation or checking the National Crime Information Center ("NCIC") database.  It is not clear from the record if this is a written policy or simply an informal office procedure.[2]  In this case, Baine and Smith relied on the dispatcher's statement that Cook was wanted, but did not check for a warrant before arresting Cook.

On the morning of March 14, 2005, plaintiff was riding in a sanitation truck with Doyle Alsbury and Junior Grube.  Alsbury drove the truck to a convenience store and parked on the side of the store.  After approximately 10 to 15 minutes, law enforcement officials arrived.  Baine and Smith approached the truck and told Cook to "freeze."  It is clear that Baine pointed his firearm at plaintiff, but Smith states that he never took his firearm from the holster.  Plaintiff refutes Smith's contention and claims that his firearm was also drawn during the arrest.  Baine and Smith believed this level of force was necessary because plaintiff had been accused of a violent crime.  The parties

---

[1]  It appears that several police officers not named as defendants in this lawsuit took part in the arrest.  Baine states that Randall Lloyd, an Ottawa County deputy sheriff, and Rocky Ferdig, chief of the North Miami Police Department, assisted with the arrest.

[2]  Plaintiff refers to this procedure as a rule adopted by the Commerce Police Department. However, in his deposition, Smith states that he checks a hard copy of the warrant as a practice developed through training and experience, and Baine was not asked to clarify this point in his deposition.

do not dispute that Cook did not draw a weapon.  Cook exited the vehicle after approximately 90

seconds, and was immediately placed under arrest.  Cook does not contend that the police used

excessive force after he stepped out the vehicle.  Police arranged for Cook to be transported to the

Ottawa County Jail.

Once Cook arrived at the jail, police discovered that a warrant had not been issued for his

arrest.  After 30 to 45 minutes, Cook was released.  He filed this lawsuit under 42 U.S.C. § 1983

alleging that defendants violated his constitutional rights.  Specifically, Cook claims that police

violated his Fourth Amendments right to be free from unreasonable search and seizure, and that

police used excessive force when arresting him.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine

issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp.

v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986);

Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates

the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317.

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  Kaul v. Stephan,

83 F.3d 1208, 1212 (10th Cir. 1996).  "Summary judgment will not lie if the dispute about a material

fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Plaintiff asserts that he is entitled to relief under several theories.  First, he claims that police violated his Fourth Amendment rights because they arrested him without probable cause to believe that he had committed a crime.  Second, plaintiff claims that police unnecessarily used deadly force to effect his arrest, and this also constituted a violation of the Fourth Amendment.  As a corollary, plaintiff asserts that the city of Commerce failed to adequately train its officers and enacted policies that proximately caused the violations of his Fourth Amendment rights.  Defendants Baine and Smith argue that they are entitled to qualified immunity as to all claims.  The City claims that plaintiff has not pointed to a municipal policy as a basis for liability, and it is not a proper party.

### A.

The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to plaintiff's claims. Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit has adopted a three part test when analyzing a qualified immunity defense: (1) the court must consider if plaintiff's allegations establish a constitutional violation; (2) if plaintiff has alleged a constitutional violation, the court must determine whether the law was clearly established at the time the alleged violation occurred; and (3) even if the law was clearly established, the Court must consider any extraordinary circumstances that prevented the public official from knowing his actions were unconstitutional. Gomes v. Wood, 451 F.3d 1122, 1134 (10th Cir. 2006); Lawrence v. Reed, 406 F.3d 1224, 1230 (10th Cir. 2005).  Law is clearly established if "a reasonable official in defendant's situation would have understood that his conduct" violated plaintiff's constitutional rights. Moore v. Guthrie, 438 F.3d 1036, 1042 (10th Cir. 2006). In Hope v. Pelzer, 536 U.S. 741 (2002), the Supreme Court changed this analysis from  a "scavenger hunt for prior cases with precisely the same facts" to an inquiry into whether officials had fair notice that their conduct was unconstitutional. Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004).

Plaintiff bears the burden to prove that his constitutional rights were violated and that the law giving rise to his claim was clearly established at the time the acts occurred. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  The Court must assess the reasonableness of the officer's actions

in light of the law existing at the time of the alleged violation and determine whether plaintiff's legal rights were sufficiently clear that a reasonable police officer would have known his conduct violated the law.  Id.  Plaintiff claims that the rights to be free of an unlawful arrest and excessive force during an arrest are clearly established and that defendants are not entitled to qualified immunity.

**B.**

Plaintiff asserts that defendants violated his right to be free from unreasonable seizure under the Fourth Amendment, because they arrested him without a warrant and without probable cause. Defendants respond that they were entitled to rely on the dispatcher's statements that plaintiff was wanted in connection with a stabbing as a basis to arrest him.  The parties do not dispute that police officers did not have an arrest warrant.  However, the parties disagree as to whether police had probable cause to arrest plaintiff.  Baine argues that the dispatcher was a trustworthy source of information and that his reliance of the dispatcher's report was sufficient to support probable cause for plaintiff's arrest.  Smith argues that he was acting in a support role only, and was entitled to rely on Baine's statement that plaintiff was wanted for commission of a dangerous crime.  Plaintiff states that police violated their own procedures by not checking a hard copy of the warrant before arresting him, and this clearly violated his constitutional rights.

Probable cause is not a standard that can be reduced to a precise definition or a fixed percentage of probability that a suspect has committed a crime.  Maryland v. Pringle, 540 U.S. 366, 371 (2003).  Police must have had more than an unsupported suspicion that a person committed a crime before initiating an arrest.  United States v. Diltz, 622 F.2d 476, 481 (10th Cir. 1980).  The Tenth Circuit has stated that:

> Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are

> sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.  Although it is not necessary that the officer possess knowledge of facts sufficient to establish guilt, mere suspicion is insufficient to establish  probable  cause . . . . [P]robable cause must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police officer.

United States v. Edwards, 242 F.3d 928, 934 (10th Cir. 2001) (quoting United States v. Maher, 919 F.2d 1482, 1485-86 (10th Cir. 1990)).

Both parties rely on United States v. Mounts, 248 F.3d 712 (7th Cir. 2001), to support their arguments.  In Mounts, Arkansas police pulled over a driver based on the mistaken belief that Georgia law required a license plate to display both the year and month the vehicle's registration would expire.  Id. at 713.  Police requested permission to search the truck, which the driver initially granted.  Police removed a heavy suitcase from the truck, at which point the driver rescinded his consent to the search.  Id. at 714.  Although the police suspected the car contained drugs, they released the driver.  They were still suspicious that the driver was transporting drugs, and continued to follow him.  Police performed a background check on the driver and noticed that his license had been revoked.  After checking with a dispatcher to confirm that the driver was violating Arkansas law, police stopped the car and arrested the driver for driving with a revoked license.[3]  The Seventh Circuit held that police are "entitled to rely on the reasonable information relayed to them from a police dispatcher" and that probable cause existed to support the driver's arrest based on the dispatcher's report.  Id. at 715.  Officers could reasonably have determined that driving with a revoked out-of-state license was a violation of Arkansas traffic laws and had no further duty to check the information provided by the dispatcher before arresting the driver.

---

[3]     A subsequent inventory search of the car located drugs inside the vehicle.  The driver sought to suppress this evidence on appeal to the Seventh Circuit.

It appears that the Tenth Circuit would agree with the rule stated in <u>Mounts</u>.  In an unpublished opinion, the Tenth Circuit held that officers had probable cause to arrest a suspect for driving a stolen vehicle based on a dispatcher's report that the vehicle had been reported as stolen.  <u>Miller v. City of Nichols Hills Police Dept.</u>, 42 Fed. Appx. 212 (10th Cir. 2002).[4]  Rejecting the plaintiff's assertion that police have a duty to check the accuracy of a dispatcher's report, the court stated that "[t]he officers were entitled to rely on the reasonably trustworthy information provided to them by the dispatcher, even though the information was later determined to be faulty or inadequate."  <u>Id</u>. at 216.  However, in <u>Miller</u>, the dispatcher requested an NCIC report before reporting that the vehicle was stolen.  The court found that it was reasonable for the officers to rely on the stolen vehicle report relayed by the dispatcher and probable cause existed for the officers to make a warrantless arrest.

Plaintiff relies on the fact that the dispatcher requested verification from NCIC to distinguish <u>Miller</u> from the instant case, arguing that the police dispatcher's information in this case was inherently unreliable because the dispatcher did not check for the existence of a warrant.  Plaintiff cites Baine's deposition testimony as evidence that police had a duty to check for the existence of a warrant, because Baine stated that he generally requested a copy of a warrant following a dispatcher's report.  However, plaintiff's argument fails for two reasons.  First, <u>Mounts</u> and <u>Miller</u> do not condition a police officer's reliance on a dispatcher's report upon a further duty to verify the accuracy of dispatcher's information.  In <u>Miller</u>, the Tenth Circuit held that police were authorized

---

[4]    The Court is aware that citation of an unpublished decision is disfavored. 10th Cir. R. 36.3.  However, this unpublished decision has persuasive value on a material issue not addressed in a published opinion and it assists the Court in its disposition of this issue.

to arrest a suspect based on "reasonably trustworthy information" provided by a dispatcher, even if the information was later proven to be inaccurate.  Id. at 216.  Plaintiff's argument that police needed to double check the dispatcher if they did not personally observe any alleged criminal activity is not supported by case law.  Police had probable cause to arrest plaintiff based on the dispatcher's report and he has not shown that his Fourth Amendment rights were violated. Therefore, defendants Baine and Smith are entitled to qualified immunity.  Second, even if police had an internal policy to check for an arrest warrant after receiving a dispatcher's report, this failure constitutes negligence only.  Under section 1983, plaintiff must prove that police intentionally deprived him of a constitutional right.  Paul v. Davis, 424 U.S. 693, 1159-60 (1976); Martinez v. Uphoff, 265 F.3d 1130, 1133-34 (10th Cir. 2001).  "Neither simple nor gross negligence implies an intentional and deliberative violation of constitutional rights, and consequently neither form of negligence satisfies the scienter requirement of § 1983."  Johnson v. Martin, 195 F.3d 1208, 1219 (10th Cir. 1999) (quoting Woodward v. City of Worland, 977 F.2d 1392, 1400 (10th Cir. 1992)). The summary judgment record does not contain any evidence suggesting that Baine or Smith intentionally arrested plaintiff without probable cause or acted recklessly by failing to verify the dispatcher's report.  Even if defendants were not entitled to qualified immunity, summary judgment would be appropriate on the merits of this claim.

The Court finds that there is no genuine issue of material fact that precludes summary judgment on plaintiff's wrongful arrest claim.  Based on the dispatcher's report, police had probable cause to arrest plaintiff, and plaintiff has not carried his burden to prove that defendants violated his clearly established constitutional rights.  Therefore, defendants Baine and Smith are entitled to qualified immunity from plaintiff's claim for wrongful arrest.

## C.

Plaintiff claims that police violated his constitutional rights by using excessive force to arrest him, because plaintiff did not present any immediate threat of danger to police.  The parties do not dispute that at least one police officer drew his gun and pointed it at plaintiff for approximately 90 seconds before plaintiff was arrested.  Once plaintiff was removed from the sanitation truck, he does not complain that he was mistreated.  He bases his excessive force claim on the sole fact that Baine and possibly Smith drew their firearms before arresting him.

The Supreme Court has recognized that claims against police for use of excessive force during an arrest arise under the Fourth Amendment and must be analyzed under a standard of "objective reasonableness."  Graham v. Connor, 490 U.S. 386, 388-89 (1989).  The subjective beliefs of the arresting officers are irrelevant to the court's consideration of a claim for excessive force.  Cortez v. McCauley, 428 F.3d 980, 989 n.7 (10th Cir. 2006); Hinton v. City of Elwood, Kansas, 997 F.2d 774, 780 (10th Cir. 1993).  The Tenth Circuit has stated that:

> The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene," recognizing the fact that the officer may be "forced to make split-second judgments" under stressful and dangerous conditions . . . .  The Fourth Amendment standard requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and other's safety, and the suspect's attempts to resist or evade arrest . . . .

Holland v. Harrington, 268 F.3d 1179, 1188 (10th Cir. 2001).  When determining the reasonableness of the police officers' actions, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Phillps v. James, 422 F.3d 1075, 1080 (10th Cir. 2005) (quoting Graham, 490 U.S. at 396).

The Supreme Court has clarified the qualified immunity analysis for excessive force claims. While still recognizing that <u>Graham</u> clearly recognized a Fourth Amendment right to be free from excessive force during an arrest, a court must look at whether the particular conduct of police constituted a clearly established violation of plaintiff's constitutional rights.  Plaintiff may not simply cite to a general right to be free from excessive force; he must identify case law finding a constitutional violation under the particular circumstances of the case.  <u>Brosseau v. Haugen</u>, 543 U.S. 194, 199-200 (2004).  On its own, <u>Graham</u> does not provide the "'kind of clear law (clear answers)'" that apply in every excessive force claim and plaintiff must do more than make a generalized claim that police used excessive force when arresting him. <u>Id</u>. at 198-99.  In <u>Brosseau</u>, the Supreme Court narrowed the qualified immunity analysis to the question of whether it was clearly established that police used excessive force to shoot a felon fleeing capture to protect other people in the immediate vicinity. <u>Id</u>. at 199.  In this case, plaintiff cites generally to a right to be free from excessive force, but does not cite case law showing a clearly established right under the particular circumstances.

The undisputed facts show that police received a dispatch to be "on the lookout for stabbing suspect Joshua Cook."  Dkt. # 57, Ex. 1, Newton County Central Dispatch Fax Item Sheet.  Police contacted sanitation officials and determined where plaintiff would be located.  Baine contacted the local sheriff's office for back-up during the arrest, and Smith responded to Baine's request for support.  Plainitff was wanted in connection with a stabbing, which is a crime of violence and police could anticipate that plaintiff would be armed.  Police had time to plan the arrest and the arrest occurred during daylight hours.  Police approached the sanitation truck and Baine told plaintiff to "freeze."  Baine pointed his gun at plaintiff for approximately 90 seconds, and plaintiff claims that

Smith also had his gun raised during this time.  Police are trained that a suspect potentially armed with a knife poses a threat to a police officer's safety if he is standing within 21 feet of the arresting officer.[5]  Plaintiff was asked to step out of the truck and he complied.  He was handcuffed and taken to the Ottawa County Jail for about 30 to 45 minutes before he was released.  Plaintiff does not offer any evidence that officers used excessive force once he was removed from the truck or on the way to the county jail.

Plaintiff's primary argument is that police inappropriately resorted to deadly force by displaying their weapons, because police may not assume the suspect is armed and dangerous unless they see the suspect with a weapon.  Plaintiff cites Holland as clearly established law supporting his claim.  However, under the narrower confines of Brosseau, plaintiff's reliance on Holland is misplaced.  In Holland, a SWAT team executed an arrest warrant[6] for Samuel Allen Heflin at his home.  268 F.3d at 1183-85.  When they arrived, police noticed three people playing basketball in the driveway, including an 8 year-old child.  The SWAT team approached with weapons raised and ordered the basketball players to lie face down in the driveway. Continuing to the house, the SWAT team encountered a 14 year-old boy and, at gunpoint, ordered him to lie on the ground.  A 4 year-old child witness this, and ran into the house screaming.  Police chased the child into the home, and pointed their laser-sighted rifle at the child's back.  Inside the house, police found five unarmed

---

[5]     Plaintiff claims that officers did not actually see him holding a knife and that police had no reason to be in fear for their safety.  Based on the dispatcher's report, a reasonable police officer could have concluded that the suspect was armed with a knife, even if the knife was not visible during the arrest.  In addition, police discovered that plaintiff was carrying a pocket knife during a search incident to arrest, confirming their suspicion that plaintiff was armed.

[6]     The arrest warrant was for misdemeanor assault and battery arising out of an altercation that took place outside of a restaurant.

people, who were also ordered to lie face down and were guarded at gunpoint.  Police arrested Heflin but he was later acquitted of all charges.  The Tenth Circuit held that police used excessive force by pointing firearms at children, because the children did not pose any threat of danger to police.  However, the SWAT team's initial show of force was reasonable under the circumstances, because police had a "plausible basis" to believe that Heflin could have been armed.  Id. at 1191.  Although the facts in that case created a genuine issue of material fact regarding the continued use of force, it was not improper for police to approach the house with a show of deadly force.  The Fourth Amendment violation arose only when police threatened residents of the home after determining that no one was armed or posed any risk of harm to police.

The level of force and the abuse of police authority clearly distinguish Holland from this case.  Police pointed a gun at plaintiff for 90 seconds and had a reasonable basis to believe that he was armed with a knife.  Even in Holland, the initial display of force was appropriate because police believed that the suspect had access to a weapon.  Id. at 1191-92.  The amount of time in this case was not excessive and, although plaintiff may have been frightened by the show of force, a limited use of force was not unreasonable under the circumstances.  Once plaintiff left the vehicle, police put their weapons away and placed plaintiff under arrest without any rough treatment.  Police conduct complied with Holland, because police reduced the level of force within a short period of time after they determined plaintiff was not a threat to their safety.  See id. at 1193 ("Where a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, in contrast to simply holding the weapon in a fashion ready for immediate use.").

13

Contrary to plaintiff's assertions, it  is not unreasonable for an officer to initiate an arrest with a firearm drawn or even point the gun at a suspect until an assessment can be made regarding any potential danger to police or others.  Hernandez v. Conde, 442 F. Supp. 2d 1141, 1158 (D. Kan. 2006).  Plaintiff's position seems to be that it unreasonable for police to point a firearm at a suspect unless police are certain the suspect is armed and dangerous.  However, Fourth Amendment jurisprudence is not based on certainties; reasonableness is the standard which the Court must use to weigh defendants' conduct in this case.  The Court finds that, based on the undisputed facts, defendants' conduct was objectively reasonable.  Plaintiff has the burden to prove that police violated his Fourth Amendment rights and that his constitutional right was clearly established. Plaintiff has not shown either element, and defendants are entitled to qualified immunity on plaintiff's claim for excessive force.

### D.

Plaintiff has also filed claims against the City for engaging in a conspiracy to arrest plaintiff in violation of his Fourth Amendment rights.  Although it is difficult to ascertain the nature of this claim, it appears that plaintiff has accused city employees of conspiring with police officers before plaintiff's arrest took place.  Plaintiff has not responded to defendant's motion for summary judgment on this claim.

Under section 1983, a municipality may be held liable only for constitutional violations resulting from official policies and customs.  Monell v. Dept. of Social Servs., 436 U.S. 658, 690-91 (1978).  A city or county government can not be liable based on respondeat superior merely for employing a tortfeasor.  Starrett v. Wadley, 876 F.2d 808, 818 (10th Cir. 1989).  In the context of law enforcement, a police chief or police department is liable for failing to adequately train

subordinate officers if the plaintiff can show that city officials acted with deliberate indifference. City of Canton, Ohio v. Harris, 489 U.S. 378 (1989). To impose municipal liability, the plaintiff must generally show that a pattern of unconstitutional behavior occurred over a period of time to refute the inference that any deprivation of constitutional rights was an isolated incident. Brown v. Reardon, 770 F.2d 896, 902 (10th Cir. 1985).

Plaintiff has referenced a municipal policy related to the use of excessive force during an arrest. The policy quotes Okla. Stat. tit. 21, § 732 and, in addition, closely tracks the parameters for determining the proper level of force under the Fourth Amendment standards discussed above. The policy is not facially unconstitutional and does not give rise to municipal liability under section 1983. Plaintiff has produced no evidence of an official custom or widespread practice to use excessive force during an arrest, so that the city can found to have condoned an unconstitutional practice. Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986) (suggesting that plaintiff does not have to prove that municipality enacted a written policy, as long the "official policy" was approved of by a legislative body or person with final decision-making authority). The summary judgment record does not support any theory of municipal liablity. Even if plaintiff could prove his allegations that city employees engaged in a conspiracy to arrest him, this is not evidence of an official policy or custom that deprived plaintiff of a constitutional right. Therefore, the City is entitled to summary judgment on plaintiff's claim under section 1983.

**IV.**

Plaintiff seeks leave of court to amend his complaint to add two new defendants and requests an additional 60 days to conduct discovery.  Plaintiff requests permission to file an amended complaint adding the Ottawa County Sheriff and Jeffrey Harding, the dispatcher who notified Baine that Cook was wanted by Newton County police.  The Court had previously set a deadline of April 28, 2006, to join additional parties, and plaintiff's motion was filed on August 31, 2006.  Plaintiff states that he received additional discovery in June 2006 that suggested he may have a claim against these additional parties.  All defendants have objected to plaintiff's request, arguing that the proposed amendment is untimely and any amendment would be prejudicial to defendants.

Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend a pleading "by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  However, the court may deny a motion to amend if it finds any "apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962).  "[D]enial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" Minter v Prime Equipment Co., 451 F.3d 1196, 1206 (10th Cir. 2006) (quoting Frank v. U.S. West, 3 F.3d 1357, 1365-66 (10th Cir. 1993)).  Untimeliness alone is a sufficient reason to deny a motion to amend.  Duncan v. Manager, Dept. of Safety, City & County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005).  The court may also deny a motion to amend if the proposed amendment would be futile, meaning that it could not survive a motion to dismiss.  Ketchum v. Cruz, 961 F.2d 916, 920 (10th Cir. 1992).

16

For many reasons, the Court finds that it would be improper to grant plaintiff's motion to amend. Plaintiff became aware of the information giving rise to claims against these additional defendants in June 2006, but did not request permission to amend his complaint at that time. Plaintiff's attorney states that he had surgery on August 3, 2006, but this does not provide any explanation why plaintiff's attorney did not file a motion to amend in June or July. Plaintiff also filed his motion to amend after the cutoff for filing dispositive motions and, in order to grant plaintiff's motion, the Court would have to enter a new scheduling order to allow the new defendants time to conduct adequate discovery to prepare their defense. Defendants have complied with the Court's scheduling order and it would be prejudicial to them if the Court were to reopen discovery. Plaintiff's motion is untimely and could be denied on this basis alone.

However, there is an additional reason not addressed by the parties supporting denial of plaintiff's motion to amend. Plaintiff intends to join the Ottawa County dispatcher and Ottawa County Sheriff as additional parties. However, plaintiff denies that he will develop any new theories of liability and that he intends to pursue the same claims against the new defendants. Based on the Court's findings above, the Court finds that the new defendants will likely be entitled to qualified immunity and it would be futile to allow plaintiff to join them as parties. Police had probable cause to arrest plaintiff and did not use excessive force during the arrest. Plaintiff's claim against the dispatcher for creating a false impression that there was a warrant for his arrest is a negligence claim and would not allege an intentional deprivation of plaintiff's constitutional rights. The Court does not find that plaintiff's claims against the new parties would be likely to survive a motion to dismiss. Therefore, plaintiff's motion to amend is denied.

17

**IT IS THEREFORE ORDERED** that Defendant Gary Smith's Motion for Summary Judgment (Dkt. # 46) is **granted**.  Motion for Summary Judgment on Behalf of the Defendants, Robert [sic] and The City of Commerce, Oklahoma (Dkt. # 48) is **granted**.  Plaintiff's Motion for Leave to Add Additional Defendants and for Extension of Discovery (Dkt. ## 50, 52) is **denied**.

**DATED** this 13th day of October, 2006.


CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT